Good morning, Your Honor. Robert Knutes from the Cher Tremonti Firm, representing appellants Jocelyn and Sean Murphy. Pro se appellant, Mr. Gounod, is appearing remotely. We've divided our time 14 minutes and 6 minutes, and I intend to reserve 2 for rebuttal. May I also note for the Court the presence today of Mr. and Mrs. Murphy, who have traveled here from Colorado, because nothing is more important to their family than what we know will be Your Honor's careful consideration of their appeal. Two days ago, in Jocelyn v. SEC, the Fifth Circuit Court of Appeals issued a decision that addressed the right of a defendant to a jury trial in an SEC enforcement action. Regardless of whether or not you agree with the majority decision in that case, that the majority opinion by Judge Elrod includes a compelling and passionate argument that when an individual is accused by the government of violations of federal law, the right to a jury trial is both the most important safeguard of liberty built into the Constitution and its most powerful check on government power. It's one of the fundamental rights that makes our system so special. This appeal primarily concerns Rule 56 of the Federal Rules of Civil Procedure, which is carefully crafted not to infringe on an individual defendant's right to a jury trial. Rule 56 is consistent with the Seventh Amendment because it precludes a district court from deciding factual disputes by weighing evidence and making credibility determinations before a jury trial. Both the Supreme Court and Ninth Circuit precedent require the district court to draw all inferences in favor of the defendant when the government seeks summary judgment. Well, what's in dispute on either of these two claims, on either the zip code issue or on the broker, whether they were brokers? Well, the fundamental dispute on the broker issue is did the conduct amount to trading for the account of others? We presented evidence that it did not. We presented affidavit testimony. It was supported by documents in the record that what this relationship was and what this activity was was no different fundamentally than an investment club, where people get together, pool their money, and trade securities to try to make profit. They split the profits. They share the losses. And the SEC has never required those people to register as brokers. And so on that issue, it's a hotly contested issue as to whether that conduct amounts to a violation of Section 50A. But here, the capital was provided exclusively by Mr. Riccardi. As opposed to an investment club, it's just people pooling their funds. Here, Mr. Riccardi provided exclusively the Murphy's. Mr. and Mrs. Murphy acted and used those funds to invest. So doesn't that fall under the kind of plain language of broker? No, and here's the reason why. Because it's not about where you get the capital. I can borrow money from my brother-in-law and trade. That doesn't mean I'm trading for him. It means we have a relationship of some sort whereby we've agreed that I'm going to do the trading. He's provided the money. But that doesn't mean it by itself. It's for him. And the purpose of the law about brokers is protecting the quote-unquote client that you don't misuse the funds or do something risky and hurt the client here. And if you're using Mr. Riccardi's funds and you're executing trades, obviously he's put at risk. I understand not fully at risk because they're bearing some risk as well. But still, there is some risk that the client is bearing here. And that's the purpose of the rule. The whole regulatory structure of broker-dealer registration has a lot of protections in it relating to communications with clients who you are then executing trades in the markets for, investment advice, things like that. Here, it's a business relationship whereby they agreed where they were both trading. They're both sophisticated traders. They agree that for some trades that my clients are responsible for in accounts that they solely own and control, that they're going to share profits based upon the success or failure of those. And the fact that there was financing in part, not in whole, because at any given time during the course of a month, there's profits or contributions being made from the Murphys, ultimately that support the trading activity. So it's not just a situation where you can consider Mr. Riccardi a customer of the Murphys unrestrained brokerage activity. I'll note that the SEC charged Mr. Riccardi and his firm with being brokers. There's no and so I think that the fact, the disputes that exist in connection with the Section 15A claim will go to the fundamental question of what kind of relationship it is. And also, the district court got there by not crediting the testimony of the Murphys, by making, by clearly weighing the evidence, including saying, okay, I'm not going to credit your testimony that it was a partnership because you didn't file a tax form. But the truth is, the IRS doesn't require the filing of a tax form. Similarly, with respect to the factors that this court set out in SEC versus Feng, which is the controlling decision as to what brokerage activity is, and you're supposed to consider the totality of the circumstances regarding those factors, and here the court picked and chose among the factors to reach their conclusion. Now a totality of the circumstances test, you know, is just not suited, not well suited for a summary judgment decision in favor of the government when the evidence is mixed. Especially when there's just no rule of law or statute that guides, you know, that says, how do you weigh those factors? Now a jury can emphasize one or two of those factors and reach a conclusion, but a district court on summary judgment cannot. I'd like to turn to the fraud allegation that Your Honor addressed to what's in dispute. What's in dispute is whether there was any deception in connection with the purchase of a security. Well, I thought there were zip codes that were inaccurate. And there's nothing in the record that shows those zip codes were communicated to a seller of the securities. I mean, reliance is not an element. It's not a reliance argument. It's an argument that the deception was not communicated. I can tell my brother that, you know, a lie about something, but if it's not communicated to the actual purchaser of the seller of security, it's not in connection with the purchaser sale of the security. And here, there's no evidence that it was advanced to those purchasers and sellers, you know, actual purchasers and sellers. And the record also shows that there's no evidence that it mattered. There's no evidence that these securities were, that Mrs. Murphy was allowed to purchase those securities because of any erroneous zip code. For example, there's three bonds at issue. For the Puerto Rican bond, based upon evidence presented by the SEC, there's no separate priority for residents of Puerto Rico at all. That's at ER 578, 702, 716. For Oregon and California bonds, yes, there's an in-state priority immediately followed by a national priority for retail, you know, clients. No evidence in the record as to that there was any connection between the zip code and the actual purchase. What was the purpose of providing the incorrect zip code of that area? The potential for getting a higher priority that might, under some circumstances, result in the opportunity to purchase that would otherwise not exist. But all that, all of which, I'm not saying it couldn't be proved, I'm saying the record here doesn't show there was actual deception. The district court said that Mrs. Murphy obtained bonds based upon getting Oregon and California retail priority. There is no evidence that that's what caused it because the SEC didn't present the underlying documentation of how those bonds were allocated. And Mrs. Murphy certainly didn't admit that because she didn't know why she got the other reason. Brokers didn't share that information with them. The SEC might know it, but it's not part of the record here. It's also the case that the brokers who did receive the zip codes knew what her zip code was. The district court below says she presented no evidence of that fact. That's not true. She put in affidavit testimony that every time she filled out the new account form, she put in her correct, you know, zip code information. What would be the relevance of their knowledge of it if reliance is not a requirement? Because they're the only ones who could conceivably be deceived. Again, it's not a reliance point. It's about who was deceived. And my point is that on the record before the district court, there was no evidence of deception by anybody. Let me briefly address, if no further questions on the liability case, I need to briefly address the remedies decision. On the penalties imposed by the court, the penalties were in effect in this case, not decided fundamentally by the SEC. The statute says the court has to decide based upon the facts and circumstances what the appropriate penalty is, and it sets maximum amounts. And the court's supposed to do that, you know, in consideration of the public interest, and the method of choosing the maximum amount is left up to the district court. Here, the SEC picked number of violations to set the maximum, and the court said below, said, because the SEC picked number of violations, I'm not even going to consider, you know, the pecuniary gain that could result. That was error, because it was up to the court to decide which method of determining the maximum penalty. It wasn't up to the SEC. And then similarly, rather than, you know, independently determine how the factors in SEC versus Fenn and SEC versus Murphy set by this court, how those factors should apply to the amount of the penalty, which can be from zero up to the maximum, the court instead used those factors to decide whether there should be a reduction from the penalty asked for by the SEC. And that, again, turned it upside down as to who should determine the If you don't have any further questions now, I'll just reserve the rest of my time. I do have a question about the obey the law injunction. Would you address under what circumstances, if any, an obey the law injunction would be proper? I think when it's a lot, when, with respect to the Section 15A violation, this is a quintessential example of why it's not proper, because not even the SEC commissioners agree on whether what's a violation of Section 15A. As I incited in my reply brief, it's controversial as to when it is or is not. And so if the SEC commissioners can't agree, I don't think it's, you know, it's specific enough for an average citizen. I think the anti-fraud is more, you know, makes more sense because, you know, you have a sense of, you know, what's misconduct in that context. Thank you. Thank you. Mr. Gounod, you may proceed. I believe you're on mute, so if you can unmute. Sorry about that. Thank you for your time and thanking, thank you for allowing me to appear remotely. I'd like to use my time to emphasize several points. The record contains undisputed evidence. The appellants were individuals who were buying and selling securities in their own brokerage account. Each had an unincorporated business partnership with RMR, and RMR had a business of clearing and financing trades for individuals. Each shared profit and losses with RMR, and we had market risk on each and every trade. If you apply the 1984 Supreme Court ruling in Securities Industry Association that brokers are agents for their clients and agents have no market risk, then we were not brokers. If you apply state law or tax law to these facts, the result is the same, sharing profits and losses in an unincorporated business partnership, I'm sorry, sharing profits and losses in an unincorporated business creates a partnership. The district court erred when it ruled there was no partnership. That absence a K-1, absence a K-1 form has no bearing on the existence of an investment partnership. Partners are agents of the partnership for which they beneficially own, and it's undisputed that on my five 1099s, box seven, non-employee compensation is blank. 1099s for individual independent contractors would have numbers in box seven, and this was prime in the prosecution's case. We were RMR's partners. We were not unregistered brokers acting for RMR, and this alone should mandate the reversal of this judgment. The SEC wants you to affirm the fact that the court relied on various factors described in SEC versus Henson. The record here does not satisfy one Henson factor. My reply brief at page nine analyzes those factors for you. The SEC misled the court about the securities industry process as explained in my reply on page 13. It's undisputed. All trades were executed by the SEC registered brokers in the appellant's own accounts. RMR prime broker cleared and settled and financed those trades. Clearing, settling, and financing are post-trade processes. The record has no appellant executed trades on RMR's account. In other words, there were no trades executed for RMR. The lack of fair notice, as summarized in my reply on page 16, is unrefuted by the Davey and Goliath type fight with the giant's lawyers determined to win at all costs, and frankly, their conduct throughout this process has shocked me. Finally, in my reply on page 17, the court abused its broad discretion. It weighed disputed facts. It treated unsupported assertions as fact. It misapplied law and precedent, and it failed to give due attention to a complex case. It also ignored this circuit in SEC versus Murphy. The primary purpose of the SEC enforcement is to protect the public from harm, not publish an alleged offender. Just one second. Application of the law to the record, the application of the law to this record supports reversal. Arguably, the decision errors are so egregious, the misconduct so blatant, and the harm to this appellant so severe that the judgment should be dismissed without prejudice. I respectfully ask you to do so, and I reserve the balance of my time. Thank you very much. Great. Thank you. Good morning, Your Honors. May it please the court, Rachel McKenzie for the SEC. I want to start with my friend's comments about SEC versus Jerkisee. Of course, that case was an administrative proceeding, not a district court proceeding, so the determination of the Fifth Circuit to the extent that it would otherwise be relevant to this court at all, because of course it was not decided by this court, it doesn't apply here because this was a district court action. In terms of whether summary judgment was appropriate, of course, as Your Honors know, the propriety of summary judgment is the open standard of whether or not there is a genuine dispute of material fact. In this case, the commission, with its motion for summary judgment, as Your Honors can see in the excerpts of record, submitted about 347 pages worth of evidence, to which the defendants in this case responded, the Murphys in particular, with two affidavits that amounted to approximately 43 pages. It did not create any material dispute of fact. On the question of partnership in particular, I would note that essentially what their affidavits say is just, we were partners. The existence of a partnership is a mixed question of law and fact. The Murphys and Mr. Gonneau identified neither the law that would apply to that question or facts that the district court could use to conclude whether or not there was, in fact, a partnership here. And that is why, in the district court's opinion, it says, I'm not going to rule on that basis because there is no dispute of fact on that question here. One thing that's a little bit odd here is Mr. Riccardi is not your classic client or customer here. In fact, if anything, he's probably kind of the mastermind behind this whole thing. So it does seem a little bit odd to claim that Mr. and Mrs. Murphy and Mr. Gonneau were brokers for him. I certainly understand if Your Honors don't feel particular sympathy for either RMR or Mr. Riccardi, but I would make a couple of points to that. The first is that while broker registration requirements are, of course, a huge component of why they are important is to protect customers of brokers, but the commission's mandate and the effect of these provisions is also to protect the markets more generally. Registered brokers have obligations to provide us with information that help us review the integrity of the markets. For example, they're required to let us know if they see suspicious activity going on, things of that nature. So even if you have a case where you're not particularly concerned about the customer, that registration function still serves a really important purpose. Sorry to interrupt. Are there other cases out there where courts have considered this kind of, you know, closely held operation and concluded that somebody acting on behalf of another was a broker? Are there any factually analogous cases that you're aware of? I'm not aware of any decision that actually addresses the particular question issue here, whether or not if they were a partnership, whether that would matter. What the decisions have routinely said is that the two most important factors to consider as to whether or not someone is a broker is, are you regularly participating in securities transactions and are you receiving transaction-based compensation for that activity? And there's no decision out there that says, well, even if you tick those two boxes, if you've constructed your relationship as a partnership, then you're out and it doesn't count. And I would note, although the defendants here have not suggested what law should apply here, if you look to the Uniform Partnership Act, which I believe has been adopted by California, for example, that specifically says a partnership and its partners are distinct entities, that the individual partners are agents for the partnership. So even under, you know, typical partnership law, a partner and the partnership are two distinct entities. So if you're trading on behalf of a partnership, you're still trading on behalf of another. I imagine most of the complaints you get in this area are for people who are, you know, disgruntled clients or upset clients who gave their money to somebody and they feel like it was then misused. How much of the SEC's enforcement portfolio relates to this issue we're talking about here? I would say I think this is probably a relatively new issue, but I think what's been going on, and I do want to take a step back and give your honors like a sense of the broader context of this case, as Judge Lee sort of indicated to, right? This was a large-scale scheme that involved Mr. Riccardi and his company, RMR, essentially hiring all these folks as independent contractors to go out and get new issue municipal bonds and other securities and flip them into the secondary market in ways that, you know, in some respects, as to Ms. Murphy violated the anti-fraud provisions and with respect to others such as Mr. Murphy and Mr. Gineau violated the registration provisions. But the flipping was itself? No, your honor. I would absolutely flipping is not inherently wrong or illegal, but it becomes a problem when you have a situation like this one where issuers have set requirements, and these are municipal issuers, who have set requirements for how they want their issuances to go, and they want to give priority to in-jurisdiction retail investors. And they want to do that for a couple of different reasons. One, as you'll see, you would see if you look at the declarations we submitted. But this is the zip code, the zip code issue? Yes, your honor. That Mr. Fowler from California and Ms. Lockwood McCall from Oregon said, like, we want to get our bonds in the hands of in-jurisdiction retail investors, both to give people in the community an opportunity to invest in a way that's often tax-free for them, but also because it allows the municipalities to get capital at the lowest possible cost to their taxpayers. So they're doing something for the public good. And what this kind of misconduct results in is just undermining their ability to do that, and it results in skewed pricing over time in ways that hurt the issuer. So even if this is a circumstance where, again, you don't feel particularly bad for RMR or Riccardi, there's a broader principle of saying there's another party at stake here, the governmental issuers, whose requirements for issuing these bonds have been thwarted. The inaccurate zip codes, how far did they go in the process during these purchases? Because I think your friend on the other side said, well, they sort of were presented at the first step. It didn't go beyond that. And that's because we don't need to, Your Honor. As you noted, reliance is not an element in SEC enforcement actions, and that's something the Supreme Court said in Lorenzo, but it's also in the statute itself. Section 10b prohibits the use or employment of a manipulative or deceptive device. It does not prohibit actual deception. If you look at Rule 10b-5b, it prohibits manipulation with the purchase or sale of securities. And then 10b-5c says it prohibits act or practice that operates or would operate as a fraud or deceit. So the very premise of my friend's argument about whether there's no actual deception here, that is not what's required. And that's not what's required because of what the Supreme Court said in Bateman-Eichler is the purpose of the securities laws, and that is to promote a high degree of business ethics in every facet of the securities industry. It is a problem if people are lying in connection with securities transactions, regardless of what happens once they put the lie out there. If the underwriters or the issuers here were to sue the Murphys and their response was, well, you knew about this, that's a fair defense. It is not a fair defense in an action like this, where the commission is standing in the shoes of the public and saying, we cannot have this kind of misconduct, these kind of lies happening in securities transactions. It undermines the integrity of the markets. I do also want to note one thing about the broker registration and why it's particularly important in this context. If the Murphys and Mr. Gunna have been clear about who they were, brokers for RMR, then the underwriters would have been obligated to ask additional questions. For example, who are you actually buying for? And again, that's relevant here because who the purchasers are is important to the issuers. They have very clear reasons for why they want these bonds to end up in the hands of particular investors. Can you now address the obey the law permanent injunction? First, how does it comply with Rule 65D, which says the order itself has to specify in reasonable detail what they're not supposed to do? And here, it seems like they just, the order says obey the law and just cross-references a statute, a rule. Yes, Your Honor. A couple of points. As you and my friend conceded in his brief, this court in e-debit pay said there's nothing inherently wrong with obey the law injunctions, that they are not vague, they're broad. And that's also, this court said in Fung that in particular, Section 15A is not vague because it has been on the books for 80 years and I find it actually a little bit interesting that my friend said, as his briefs indicate, there's no problem with the 10B injunction here, the issue is the 15A injunction, because the case that he cites from the Eleventh Circuit, Goebel, would say the exact opposite. The Eleventh Circuit's concern was with fraud injunctions that track the language of the fraud statutes because the concern there being, you know, what is fraud? They were not concerned with the other injunction in that case that tracked the language of Section 15C, which is about the reserve of capital funds. So even the Eleventh Circuit would not have had an issue with the 15A injunction here because it's actually quite clear what you have to do to comply with the injunction, that is not engage in transactions without registering. But, you know, probably 99% of the cases, Rule 15A is pretty clear and what a broker is. But I think probably this case is an example where it's, you know, it's a little bit trickier here because of, you know, the facts of this case. I actually, I would disagree that it's a little bit trickier in this case. In most of the cases that you see in this space, Your Honor, you're talking about what courts are struggling with and why they've developed the Hansen factors that this court adopted in Fung is, you know, it's a finder or a facilitator or, in the case of Fung, someone who's coordinating EB-5 investments and it's, you know, we're like, is it a broker? Is it not? I'm not sure. It's not classically what you would understand as a broker. None of those cases involve what you have here, which is somebody actually purchasing and selling securities with somebody else's money. And that is a classic broker arrangement. I heard my friend say, you know, the reason why this is fine is because it's, I'm going to do the trading, you provide the money. That is a broker relationship. That is what — That's true, perhaps, but it doesn't necessarily answer the question of the injunction. I mean, is there not some more specific request that the SEC would have of these appellants that could be reflected in an injunction that was more focused? Because, I mean, just to say don't violate Section 15A, I mean, I'm not supposed to violate it either. So I just wonder in light of the nature of this case whether there could be some more guidance that could  Well, I think there was guidance, extra guidance provided in the sense that the Court made clear I'm issuing these injunctions consistent with my liability and remedies rulings, which made clear exactly how the defendants in this case ran afoul of Section 15A. And in terms of the utility — if Your Honor is asking about the utility of these injunctions, they're extremely important to the Commission for two reasons. One, it allows us to initiate contempt proceedings if there's a violation rather than having to start from scratch all over again. And the other is that these injunctions are a predicate for the Commission itself to consider whether additional remedial steps are warranted in the public interest. I mean, doesn't — I agree, though, they're important, but doesn't the contempt feature of it actually call for it being more focused? Because if you're going to come and use it affirmatively and say, well, you're violating Section 15A again, and we're back here on a sort of more nuanced question of people who are operating for something that seems like it could be or arguably could not be a broker, I just don't see why in light of that it wouldn't suggest a more specific injunction. Right. Well, to — in order to get a contempt ruling, of course, like an inadvertent violation, we wouldn't be able to show contempt. You would have to show that they knew essentially that they were violating. And because the Court said, you know, consistent with my orders, like we know the kind of parameters of what was — what went wrong here and what they're not supposed to do again. And this Court has routinely upheld injunctions of this nature. Again, in e-debit pay, the Court said specifically that there is no issue with that. The one problem I have with — especially with the 15A is, you know, at least 10b-5 is specific requirements, whatever loss, causation, you see enter. 15A, we've basically said it's the Hansen factors, non-exclusive, and gives just a tremendous leeway to judges to step back from an inherent problem of these multi-factor tests because it doesn't really provide much guidance. So, I mean, particularly I think it's troubling here to say obey the law per 15A, which is these multi-factors, which none of which is dispositive. You can meet some, not the others. You know, so I find that troubling here. Well, I think in this case it shouldn't actually be that troubling because although, you know, I understand the issue with like balancing multiple factors. But in this case, you can actually just look to the text of the statute itself, right, which says you're a broker if you are engaged in the business of effecting transactions and securities for the account of another. And that's, you know, you can see that as three different requirements, which are indisputably ticked, every single one of them here, these folks, indisputably engaged in securities transactions thousands of times. Does the SEC have a position on the Hansen factors? Are these factors the correct factors to be analyzing, or do you think they're not? I think that they are, Your Honor. I absolutely think that they are. And I think this Court was right to point to them in a case like Fung where, again, it's a little bit trickier because you're sort of maybe at the outer limits of the statute where it's a little fuzzier as to what actually constitutes broker activity. And I think those factors are extremely useful in those cases when you have someone who is a facilitator or a finder and you're trying to decide whether to cross the line or not. All I'm suggesting is that this case is nowhere close to the line and that you don't need to go through that huge multi-factor analysis test, because what's clear here is the two most important factors are clearly established, which is regular participation in securities transaction for transaction-based compensation. I see my time is running out, and unless the Court has other questions. Great. Thank you. Thank you. Great. You may proceed. Mr. Goodenow, you may proceed. I'm sorry. Yeah, I'm a little lost here as to what to say, because I feel like I've been pretty much let down by this whole process at this point. This case should be overturned because there's been absolutely no evidence presented that I transacted in the name of RMR or on their behalf. The accounts where transactions were done, and this is in the record and it's undisputed, were in accounts in my name set up by me. And the fact that I used RMR for my post-transaction clearing, because that's all RMR was set up as, is a prime broker account, which is totally legal, and that's all outlined in my brief. And for them to sit there and say I did them on behalf of RMR is outrageous. There's nothing in the record at all. And once again, here we go. We're the government. Let's just say something and everybody will believe it, because they don't want to believe the defendant, especially a pro se defendant. But that's it. That's all I have to say. And I apologize for getting a little annoyed. Great. Thank you. A couple of final points, Your Honors. First, the affidavits, you know, while short and to the point, contain the terms of the partnership. And they were supported by documentation in the records presented by the SEC itself. With respect to the Hansen factors, the SEC, you know, has rulemaking authority. That's the solution here to get clarity as to what is and is not brokerage activities. You can't have district courts just, you know, rule one way in one case, one way in the other case, you know, arbitrarily balancing the Hansen factors one way or another when it's a mixed record. And that was the case here. I want to be able to argue to the jury that their common sense should say that brokers get commissions. It's just like your real estate broker, just like your stock broker, that when you're in a, you know, some kind of business together, you're not acting as a broker. You're acting, you know, because you, and the SEC says you're trading with somebody else's money. Well, what, you know, if I borrow money from a bank and trade with that, does that mean I'm, you know, trading for the bank? No. In this case, they traded in their own accounts pursuant to a particular business relationship. The last point I want to make is that with respect to the fraud claim, counsel switched to reference to a scheme liability possibility. That wasn't the basis for summary judgment. Basis for summary judgment was the material misrepresentation made. And my point is that that material misrepresentation was not made to anybody who actually sold the shares, only to people who knew what the zip codes were. Any further questions? Otherwise, I'm done. Great. Thank you. The case has been submitted, and we are adjourned for the day. All rise. Court is in session. Session adjourned.
judges: LEE, BRESS, Fitzwater